[Civ. No. 1134. Fifth Dist. Sept. 18, 1970.]

ROBERT L. MEESTER, Plaintiff and Appellant, v.
LEE H. DAVIES et al., Defendants and Respondents.

344

**COUNSEL**

Robert C. Bienvenu for Plaintiff and Appellant.

Bledsoe, Smith, Cathcart, Johnson & Rogers, Robert A. Seligson, Lawrence E. Curfman III, Gudmundson, Siggins, Stone & Goff and Jeffrey A. Skinner for Defendants and Respondents.

**OPINION**

**STONE, P. J.**—Plaintiff appeals from judgments entered pursuant to orders sustaining demurrers to his first amended complaint without leave to amend. The complaint is framed in two causes of action. The first alleges that defendant Davies, Mayor of the City of Modesto, and defendants Clark, Coyle and Stone, police officers of that city, conspired with each other and with a newspaper editor and the District Attorney of Stanislaus County to falsely accuse plaintiff of criminal acts, and that they knowingly furnished false evidence to the Attorney General, all of which caused plaintiff to be indicted by the grand jury, charged with the commission of four felonies. The gist of the action is malicious prosecution, plaintiff alleging that he was tried and acquitted. The second cause of action incorporates the allegations of the first and charges defendants with wrongful acts, and alleges such acts constituted a tortious interference with plaintiff's contract with the City of Modesto to act as chief of police.

The demurrers were sustained without leave to amend, on the grounds defendants were acting within the scope of their employment with the City of Modesto, a governmental entity, and Government Code sections 911.2 and 915 require the filing of a claim, as a condition precedent to bringing an action, against the public entity or the public employee. Plaintiff admits that he did not file the claims specified in the Government Code, and asserts that none need be filed because each defendant was acting outside the scope of his employment.

The complaint also named the district attorney as a defendant and the

demurrer as to him was likewise sustained without leave to amend, but the appeal from the judgment in his favor was dismissed prior to oral argument.

The sole question before us is whether the governmental immunity statutes are applicable, and the proposition is in a somewhat reverse posture in that plaintiff does not seek to recover from the City of Modesto for the alleged tortious acts of the defendants. He asserts his action does not come within the Tort Claims Act and the claim requirements of Government Code section 900 et seq., because the three police officers and the mayor were not acting within the scope of their respective employment. Plaintiff relies primarily upon his allegations that defendants conspired with third persons who were not employees of the city and gave false information, which took their acts outside the scope of their employment. Although the complaint does not use the language, "outside the scope of their employment," it is alleged that the mayor and the police officers in complete disregard of the "rules and regulations of the City of Modesto" acted maliciously, conspired to bring false charges against plaintiff, and made criminal accusations resulting in the criminal action.

Granting the truth of these allegations, as we must since the case comes to us after ruling on demurrers, the question whether the Tort Claims Act is applicable rests upon whether defendant mayor and defendant police officers were acting within the scope of their employment.

Defendants ground their case almost entirely upon the Supreme Court decision in *Hardy* v. *Vial,* 48 Cal.2d 577 [311 P.2d 494], which presented a like question upon apposite facts. In *Hardy* the plaintiff was discharged from his employment as a professor at the Long Beach State College as a result of charges made by the defendants. He filed an action for malicious prosecution, alleging that the defendant school officials wrongfully, maliciously and without probable cause conspired to falsely accuse him of gross immorality and unprofessional conduct during the period of his employment, for the purpose of procuring his dismissal. The case is strikingly similar to the case at bench in that the plaintiff in *Hardy* alleged that school officials, in carrying out their plan to wrongfully cause his dismissal, conspired with and were aided and abetted by other defendants who were not school officials. Here, the complaint alleges the mayor and the police officers conspired with a newspaper editor and the district attorney to cause plaintiff's indictment and trial on criminal charges. Also, as in *Hardy,* judgment was entered after demurrer was sustained without leave to amend.

An expository discussion of the scope of a public official's authority

is found in *Hardy* v. *Vial, supra,* 48 Cal.2d at page 583: "The seven school defendants occupied positions which would ordinarily embrace duties relating to the investigation of charges which could lead to the discipline or dismissal of persons such as plaintiff, and it is not claimed that the school defendants were without authority to investigate and prosecute charges made against employees. Plaintiff contends, however, that the school defendants are not entitled to the protection of the immunity rule because they assertedly acted beyond the scope of their employment when they conspired with the nonschool defendants and aided them in making and filing affidavits containing false charges. It should be noted in this connection that 'What is meant by saying that the officer must be acting within his power (to be entitled to immunity) cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.' [Citation.] The alleged purpose of the conspiracy, and, accordingly, the purpose of the school defendants in aiding the nonschool defendants in making the affidavits, was to accomplish the dismissal of plaintiff from his employment. This purpose, of course, was clearly within the scope of the official duties of the school defendants and within the protection of the immunity rule. The policy on which the rule is based would be defeated if it were held that whenever an officer uses his office for a personal motive not connected with the public good he acts outside his power."

■ Taking up, first, the alleged acts of the mayor, patently it is the duty of the holder of that office to seek dismissal of an employee he believes is performing his duties unsatisfactorily, including the chief of police. ■ The mayor represents all the people in the city who have an abiding interest in the competency and integrity of the person holding the position of chief of police. Manifestly, neither the mayor nor any other public official can carry out the duties of his office unless his powers are commensurate with his duties. ■ We conclude that the mayor acted within the power of his office in pursuance of his efforts to have the contract of plaintiff as chief of police terminated. And, under the rationale of *Hardy* v. *Vial, supra,* the mayor's alleged conspiracy with persons who were not public employees to present false evidence against plaintiff does not remove the mayor's acts from the scope of his authority.

■ Turning to the alleged acts of the police officers, it is the duty of a police officer to investigate suspected wrongdoing in the city, whether it be that of a citizen or of the chief of police, and where the chief is involved it is the officer's duty to deliver any evidence he obtains to the district attorney or the Attorney General; he certainly cannot be expected to give it to the chief. ■ As in the case of the mayor, a policeman

cannot perform this duty unless he has the power to act, and the fact the police officers conspired with third persons who were not police officers, indeed were not public employees at all, in making an investigation and furnishing information to the Attorney General, does not place their actions outside the scope of their official authority or power. (See *Hardy* v. *Vial, supra.*)

We emphasize that up to this point our discussion has been limited solely to whether defendants acted within the scope of their authority or power in committing the acts alleged in the amended complaint, which allegations we accept as true in measuring them against the general demurrers. We conclude that, in view of the broad language in *Hardy* v. *Vial, supra,* defendant mayor and defendant policemen were acting within the "scope of official duties." That conclusion, however, does no more than place defendants' actions within the scope of their duties and of their power or authority; it does not settle the question whether they were clothed with discretionary immunity.

As we read *Johnson* v. *California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the Supreme Court modified *Hardy* v. *Vial, supra,* sub silentio, not as to the scope of the power of a public employee to act, but by establishing a different test for determining when his acts are clothed with immunity. *Hardy* v. *Vial, supra,* decided several years before the enactment of the Tort Claims Act in 1963, followed a doctrine exposited by Judge Learned Hand (*Gregoire* v. *Biddle,* 177 F.2d 579, 581) in holding that public employees are shielded by immunity *whenever they act within their power,* upon the ground it is impossible to know whether the claim of wrongdoing is well founded until the case has been tried and that "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Johnson* v. *California, supra,* rejected the Hand postulate as a ground of immunity, establishing a new criterion, namely, that the public employee does not have immunity unless the act is one of policy making, sometimes designated "planning." (*Johnson,* at p. 794; *Connelly* v. *California,* 3 Cal.App.3d 744 [84 Cal.Rptr. 257].) If the act is one implementing a policy or is an operational activity carrying out a planning decision, it must stand the test of negligence, case by case, unless the activity is one for which the Legislature has provided governmental immunity by statute. (*Johnson,* at p. 797.) Although *Hardy* v. *Vial, supra,* remains viable as a test for determining the scope of power or authority of employment, it is no longer authority for the proposition that merely acting within the power or authority of his employment, as an isolated fact, clothes a public employee with immunity.

We see no distinction between the first and second causes of action insofar as the applicable principles of law are concerned. The allegations of tortious interference with plaintiff's contract with the City of Modesto are based upon the same wrongful acts alleged in the malicious prosecution cause of action, namely, that defendants made false accusations in order to have plaintiff's contract of employment with the city terminated. The basic question in both causes of action is whether defendants acted within the scope of their duties or powers.

Our conclusion that defendants were acting within the powers of their respective offices places the case within the requirement of the "Tort Claims Act" that a claim specifying the alleged wrongful acts of a public employee committed while acting within the scope of his employment must be presented to the public entity and to the individual employee as a condition precedent to filing an action. (Gov. Code, § 900 et seq.)

Plaintiff concedes that no claim of any kind was filed or presented to the public entity or the employees before he filed suit, and since the statutory time for filing has expired it is impossible for him to amend his complaint to state a cause of action. Therefore the trial court properly sustained defendants' demurrers to plaintiff's amended complaint without leave to amend.

The judgments are affirmed.

Gargano, J., and Coakley, J., concurred.