[Civ. No. 1797. Fifth Dist. Dec. 7, 1973.]

BOBBY J. NEAL, Plaintiff and Appellant, v.
CARL GATLIN et al., Defendants and Respondents.

**COUNSEL**

Strauss, Neibauer & Lacy, Strauss & Neibauer and Dan W. Lacy for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Wiley W. Manuel, Chief Assistant Attorney General, James E. Sabine, Assistant Attorney General, Thomas K. McGuire, John M. Morrison and Ronald V. Thunen, Jr., Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**FRANSON, J.**—This appeal is from a judgment of dismissal following the sustaining of a general demurrer to appellant's complaint on the ground that it did not allege that a claim had been filed against respondents' employer, a public entity, as required by Government Code section 950.2.[1]

The pivotal issue is whether the alleged activities of respondents are within the scope of their employment at Stanislaus State College (hereinafter "the college") so as to make the filing of a claim a condition precedent to starting a cause of action for injuries resulting from their acts. We answer this question in the affirmative.

In his first cause of action appellant alleges that from about September 1, 1966, to September 1, 1971, he was an assistant professor of biology at the college; that on or about October 22, 1968, respondents Hanson and Hackwell, in their capacities as members of the retention, promotion and tenure committee[2] of the department of biological sciences of the

---

[1]Government Code section 950.2 provides in part: ". . . a cause of action against a public employee or former public employee for injury resulting from an act or omission *in the scope of his employment as a public employee* is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with Section 900) of this division or under Chapter 2 (commencing with Section 945) of Part 4 of this division. This section is applicable even though the public entity is immune from liability for the injury." (Italics added.)

Government Code section 945.4 provides: "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."

[2]The committee presumably is part of a campus consultative procedure authorized by the trustees of the state college system to handle matters relating to appointment, retention, promotion and tenure of academic personnel. (See Cal. Admin. Code, tit. 5, Cal. State Universities and Colleges, art. Z, §§ 42701-42702.) It is the stated policy of the trustees that only tenured faculty members and such department chairmen and academic administrators as the campus procedures shall provide may participate in the deliberations or recommendations relating to appointment, retention, promotion or tenure (§ 42701). It is also provided that those making the recommendations shall consider information from other faculty members *and "any other source"* (§ 42701). While not specifically alleged we infer from the allegations of the complaint that respondents are either faculty members, department chairmen or academic administrators at the college and authorized under the consultative procedures established by the president to make recommendations concerning appellant's retention, promotion and tenure.

college, wrote a letter to the committee recommending that appellant be retained for the academic year 1969-1970. The last paragraph of the letter reads as follows: "We wish to express a degree of reservation with reference to this recommendation, in that there appears to be an apparent degree of incompatibility within the Department with reference to Dr. Neal. We hope that these differences can be solved in the very near future."

The first cause of action goes on to state that on or about December 16, 1968, at the direction and request of his codefendants, respondent Townsend, the dean of the college, wrote a letter to the chairman of the college retention, promotion and tenure committee, recommending that appellant not be promoted from assistant professor to associate professor for the coming academic year. That letter reads in part as follows: "Dr. Neal has asked for many adjustments in his teaching schedule which has required his colleagues to conduct classes which they have every right to expect Dr. Neal to take. He has been more than a little quarrelsome in departmental meetings. His research lies out of the area of curriculum concern at this College. Because of his interest in biology, he has asked for the development of new courses which are not compatible with the size and development of the Biology Program. Basically, Dr. Neal has repeatedly urged special consideration for himself. His contributions have been satisfactory, but have not been exemplary."

Both letters were placed in appellant's professional file at the college and it is alleged that they have been circulated and published at various institutions and to other potential employers requesting information concerning the appellant. Appellant alleges that the above-quoted portions of the two letters are false, that the publication of the letters was done maliciously and in conspiracy with all of the respondents and with knowledge that the same were false and with the intent to injure and defame him.

In his second cause of action appellant alleges in essence that he was informed that a representative of the Modesto Junior College made an inquiry to the respondent Grillos, chairman of the biological sciences department of the college, concerning appellant's "ability" and that in response to the inquiry Grillos, in conjunction with his codefendants and at their direction and request, replied that appellant was "incompatible and unreliable" and that he had not been granted tenure at the college for that reason.

In his third cause of action appellant alleges the publication of the allegedly libelous statements set forth in the first cause of action was done by respondents to induce the college to terminate his employment; be-

cause of this intereference, it is alleged that appellant was not retained on the faculty and was deprived of tenure there.

The fourth cause of action alleges that the publication of the allegedly libelous statements set forth in the first cause of action was done recklessly and with the intent on the part of respondents to injure appellant's feelings, emotions and mental health.

The complaint contains no allegation that a claim was filed with the employing public entity.

## DISCUSSION

For the purpose of the claim statute, a public employee is acting in the course and scope of his employment "when he is engaged in work he was employed to perform or when the act is an incident to his duty and was performed for the benefit of his employer and not to serve his own purposes or conveniences." (*Burgdorf* v. *Funder,* 246 Cal.App.2d 443 [54 Cal.Rptr. 805]; *Hopper* v. *Allen,* 266 Cal.App.2d 797 [72 Cal.Rptr. 435]; see also *Meester* v. *Davies,* 11 Cal.App.3d 342 [89 Cal.Rptr. 711]; Rest.2d Agency, §§ 228-229, 235.) The phrase "scope of employment" has been equated with the express or implied power of the public employee to act in a particular instance, and in evaluating his conduct to determine whether it is within the ambit of his authority we are to look not to the nature of the act itself, but to the purpose or result intended.[3] (*Hardy* v. *Vial,* 48 Cal.2d 577, 583 [311 P.2d 494]; *Meester* v. *Davies, supra,* at pp. 346-347.) If the object or end to be accomplished is within the employee's express or implied authority his act is deemed to be within the scope of his employment irrespective of its wrongful nature.

Two cases illustrate this principle: In *Burgdorf* v. *Funder, supra,* 246 Cal.App.2d 443, the defendant was chief of the division of tax collection and refund of the State Controller's office. It was alleged that he libeled the plaintiff in a letter which became a public document when he advised the plaintiff that an audit had disclosed that the plaintiff had failed to maintain records of fuel usage as a basis for filing a claim of refund of gasoline taxes and that on the basis of an audit of prior usage, it appeared that excessive refunds had been made in the past. This court held that the defendant was acting within the scope of his employment so as to require

---

[3]As noted in *White* v. *Towers,* 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636]: " 'Duties of public office include those lying squarely within its scope, those essential to accomplishment of the main purposes for which the office was created, and those which, although only incidental and collateral, serve to promote the accomplishment of the principal purposes.' "

the filing of a claim against the state because the allegedly defamatory letter was written in furtherance of the defendant's duty to review and pass on claims for tax refunds. (See also *Hopper* v. *Allen, supra,* 266 Cal. App.2d 797.)

In *Meester* v. *Davies, supra,* 11 Cal.App.3d 342, the complaint alleged that the defendant Mayor of Modesto and three defendant police officers of that city conspired with each other and with a newspaper editor and the District Attorney of Stanislaus County to falsely accuse the plaintiff, the Police Chief of Modesto, of criminal acts and that they knowingly furnished false evidence to the Attorney General, all of which caused plaintiff to be indicted by the grand jury on four felonies. Plaintiff contended that his action did not come within the claim filing requirements of the Tort Claims Act because the mayor and the three police officers were not acting within the scope of their employment when they conspired with and gave false information to third persons who were not employees of the city. The reviewing court disagreed, holding first as to the mayor that it was his duty to seek the dismissal of any city employee including the chief-of-police, who he believed was unsatisfactorily performing his duties; hence, the mayor was acting within the power of his office in seeking to terminate the chief's employment. The court relied on *Hardy* v. *Vial, supra,* 48 Cal.2d 577 in also holding that the mayor's conspiracy with third persons who were not public employees to present false evidence against the plaintiff did not remove the mayor's acts from the field of his authority. As to the police officers, the court held that it was the duty of the officers to investigate suspected wrongdoing in the city, and if their chief was involved, to deliver the evidence to the Attorney General. Because the purpose of the officers' conduct was within their authority the fact that they gave false information to outsiders did not remove the conduct from the scope of their employment.

Turning to the facts of the instant case, it is clear that the allegedly false statements contained in the letters and quoted in appellant's first cause of action, were made by respondents Hanson, Hackwell and Townsend as members of the retention, promotion and tenure committee at the college and relate directly to appellant's performance as a teacher. Manifestly, the purpose in writing the letters was to evaluate appellant's professional qualifications for advancement to associate professor, and is within respondents' authority as members of the committee. The fact that portions of the letters are alleged to contain false statements does not remove the acts of writing the letters from the scope of the respondents' employment.

As to the publication of the allegedly false statements to the representatives of other schools as alleged in the first cause of action, we hold such acts to be within the framework of respondents' implied authority to answer inquiries from persons legitimately interested in appellant's qualifications and past performance as a teacher. Questions of reliability in the performance of teaching duties and compatibility with one's fellow employees are of critical importance to a prospective employer and must be considered relevant to an applicant's qualifications for a teaching position. ■ It is well established that a former employer may properly respond to an inquiry from a potential employer concerning an individual's fitness for employment, and if it is not done maliciously, such response is privileged. (Civ. Code, § 47, subd. 3; *Lesperance* v. *North American Aviation, Inc.,* 217 Cal.App.2d 336 [31 Cal.Rptr. 873]; *Gordon* v. *Adcock,* 441 F.2d 261.)

■ Reciprocity between educational institutions in the furnishing of information concerning a former teacher's performance is essential to the achievement of high professional standards in academic employment and redounds not only to the benefit of the schools involved, but to the public as well. It is apparent that the candid exchange of information concerning former academic employees is in furtherance of the public interest in improving the quality of education.

The same principle applies to the second cause of action alleging that Grillos as chairman of the biology department gave false information in response to an inquiry by a representative of the Modesto Junior College. A department chairman is particularly well qualified to answer inquiries concerning the performance of a former teacher in his department. As explained above, Grillos' act of responding to the inquiry benefits his employer as well as the public and must be deemed to be an incident of his administrative duties as department chairman. His response, even though alleged to be false, was within the scope of his employment.

We are not deciding whether the false statements alleged in appellant's complaint are privileged (Civ. Code, § 47, subd. 3) or are within the absolute immunity rule governing public employees (Gov. Code, § 820.2; *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352].), but only whether the statements were made in the course of respondents' employment so as to require the filing of a claim against the employing public entity.[4]

---

[4]Our holding that a claim must be filed does not deprive appellant of a remedy for future publication of the allegedly defamatory statements. The general rule is that every repetition of a defamation is a separate publication and gives rise to a new cause of action. (*Di Giorgio Corp.* v. *Valley Labor Citizen,* 260 Cal.App.2d 268, 273

Inasmuch as appellant's third and fourth causes of action are based on the wrongful acts alleged in the first cause of action, they too are within the scope of respondents' employment.

We conclude that the failure to allege the filing of a claim is fatal to appellant's complaint.

The judgment of dismissal is affirmed.

Brown (G. A.), P. J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1974.

[67 Cal.Rptr. 82].) If respondents should republish the statements in the future there seems to be nothing to preclude appellant from filing the claim required under Government Code section 950.2.