**Anna RABKIN, Plaintiff,**

v.

**Shirley DEAN, Fred Collignon, Mary Wainright, Betty Olds, Carla Woodworth, and City of Berkeley, Defendants.**

No. C 93–04285 CW.

United States District Court,
N.D. California.

June 22, 1994.

Malcolm Burnstein, Catherine Trimbur, Burnstein & Trimbur, San Francisco, CA, Thomas M. Meyer, Oakland, CA, for plaintiff.

Manuela Albuquerque, Jylana Collins, Berkeley, CA, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

WILKEN, District Judge.

Plaintiff Anna Rabkin, the Berkeley City Auditor, brings this action against Defendants, the City of Berkeley and some of the Berkeley City Councilmembers, alleging that they denied her salary increases for political reasons. Defendants bring the present motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds that the individual Defendants are entitled to absolute immunity and that none of Plaintiff's eight causes of action state a claim.

Defendants' motion to dismiss came on regularly for hearing before this Court on May 13, 1994. Jylana Collins, Deputy City Attorney, appeared for Defendants, and Malcolm Burnstein and Catherine Trimbur appeared for Plaintiff. The Court, having considered all the papers submitted and oral arguments of counsel, and good cause appearing, hereby GRANTS IN PART AND DENIES IN PART Defendants' motion, as follows.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). The motion is properly granted where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

■ Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). The Court may take judicial notice of city charters, city ordinances and resolutions, and the contents and legislative history of a proposed city ordinance or resolution. *Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977).

## FACTUAL SUMMARY

Plaintiff is the Berkeley City Auditor. Under the Berkeley City Charter and ordinances, the City Auditor holds a full time department head position that is filled by election. Under the Charter, the city council fixes the auditor's salary.

On December 15, 1992, the city council failed to approve a proposed equity increase for the auditor, although it had recently approved a merit compensation plan for city employees. On July 20, 1993, the city council again failed to approve a proposed cost of living increase for the auditor, although it had recently approved cost of living increases for all city employees. The individually named Defendants either voted against the proposed auditor salary increases or abstained. Plaintiff alleges that the newly-elected majority of the city council has singled her out for adverse salary decisions to punish her for her political associations and activities, and to drive her out of office.

## DISCUSSION

### I. LEGISLATIVE IMMUNITY

■ Local legislators are entitled to absolute immunity for acts undertaken in their legislative capacity. *Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 577–80 (9th Cir. 1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). They are entitled to less protection for acts taken in their executive or administrative capacity. *Id.* at 577–78 & n. 3. Thus, the Court must determine as a matter of law whether Defendants' votes at issue were legislative or administrative acts. Where, as here, the act complained of is a vote to take or not take certain action, the critical inquiry is the nature of the action on which the vote was taken and whether that action was legislative in character and effect. *Id.* at 577–80.

■ Defendants argue that their salary actions were taken within their legislative capacity as city councilmembers to fix the auditor's salary and to make budget decisions, pursuant to their charter authority and responsibilities. As such, they say, these are the kinds of acts which courts have found to be "quintessential" legislative acts. Defendants cite several decisions from other circuits in support of this position. In *Dusanenko v. Maloney,* 560 F.Supp. 822 (S.D.N.Y. 1983), *aff'd,* 726 F.2d 82 (2d Cir.1984), which involved facts most similar to the case at bar, the elected town supervisor, his confidential secretary and the former deputy town attorney brought Section 1983 claims against members of the town board and the town itself. After an election which put the plaintiffs in the political minority, the town board cut the salaries of the supervisor and the secretary nearly in half, and declined to reappoint the former deputy town attorney. The board's authority to fix salaries of all employees was provided in Town Law. The

court held that the board members were entitled to legislative immunity because the actions complained of were well within the scope of their authority as outlined in Town Law, and were tasks similar to those that are carried out by the New York legislature. *Id.* at 827.

Other decisions cited by Defendants similarly held that legislative votes to eliminate individual positions were legislative acts entitling the legislators to absolute immunity, even where, as is alleged here, they were directed at specific individuals for political reasons.[1]

Plaintiff relies on cases within this circuit, but which do not involve similar facts.[2] Plaintiff's central argument is that these cases illustrate acts taken, by vote of the legislative officials, against single individuals rather than the public at large, and therefore characterized as administrative. However, whether the act affects only one individual is not the determinative factor in the Ninth Circuit decisions. *See Cinevision,* 745 F.2d at 579. Rather, under both Ninth Circuit and Supreme Court decisions, the inquiry involves the nature of the action and the capacity in which the legislators were acting. *See, e.g., Cinevision,* 745 F.2d at 579; *Forrester v. White,* 484 U.S. 219, 223, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). In all cases cited by Plaintiff, the legislators were seen as monitoring and administering contracts or enforcing legislation, and thus as performing administrative or executive acts. Here, De-

fendants were voting on the Auditor's salary. By definition, this function affects only one individual. However, as demonstrated by the cases cited by Defendants, legislative votes affecting positions and salaries of city employees are consistently interpreted as a legislative acts.[3]

Moreover, the Supreme Court holds that the overriding concern in questions of official immunity is not the scope of the acts, but a "functional" inquiry, in which the courts must "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and ... seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester, supra,* 484 U.S. at 224, 108 S.Ct. at 542. Defendants bear the burden of showing that absolute immunity "is justified by overriding considerations of public policy ..." *Id.*

Defendants make a convincing argument under this test. If their votes to fix the auditor's salary are not protected by legislative immunity, each time they vote to fix this salary, the individual councilmembers would be subject to suit. This would chill the councilmembers' discretion to set the salary under the City Charter, and essentially force them to grant the same cost of living increases and salary adjustments to the Auditor that are provided to other city department heads. Thus the City Charter's provision for discretion would be obviated, and the public inter-

---

1. *See Rateree v. Rockett,* 852 F.2d 946, 950 (7th Cir.1988) (elimination of position from budget; "Employment decisions are not administrative when accomplished through traditional legislative functions."); *Aitchison v. Raffiani,* 708 F.2d 96, 99 (3d Cir.1983) (ordinance abolishing appointed position); *Herbst v. Daukas,* 701 F.Supp. 964, 968 (D.Conn.1988) (elimination of position, resulting in a demotion); *Drayton v. Mayor & Council of Rockville,* 699 F.Supp. 1155, 1157 (D.Md.1988), *aff'd,* 885 F.2d 864 (4th Cir.1989) (elimination of position); *Ditch v. Bd. of County Comm'rs of County of Shawnee,* 650 F.Supp. 1245, 1250 (D.Kan.1986), *amended on other grounds,* 669 F.Supp. 1553 (D.Kan.1987) (restructuring job titles which reduced two jobs into one); *Goldberg v. Village of Spring Valley,* 538 F.Supp. 646, 650 (S.D.N.Y.1982) (approval of replacement appointee following mayor's termination of village employee).

2. *See Cinevision, supra* (exclusion of certain performers under contract for use of concert bowl); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (9th Cir.1982) (selective enforcement of zoning plan against specific property owner); *Bateson v. Geisse,* 857 F.2d 1300 (denial of building permit to specific property owner); *Zamsky v. Hansell,* 933 F.2d 677 (9th Cir.1991) (challenge to zoning plan); *Trevino v. Gates,* 23 F.3d 1480 (9th Cir. 1994) (approval of payment of punitive damages award against police officers).

3. Plaintiff's attempt to distinguish the votes at issue on grounds that the money for the Auditor's proposed salary increases had been included in the budget previously adopted by the City Council (before the election which changed the make-up of the Council) is unavailing. The Council's budgetary decision-making process is not limited to the formal adoption of a budget.

est that Charter provisions be followed and that councilmembers be free to exercise their judgment pursuant to the Charter would be harmed. It is in the public interest that councilmembers feel free to exercise their judgment in refusing to raise the Auditor's salary without fear of burdensome litigation and personal liability for damages. *See Lake County Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 404–05, 99 S.Ct. 1171, 1178–79, 59 L.Ed.2d 401 (1979).

Accordingly, the Court holds that the individual councilmembers are entitled to absolute legislative immunity, and the first through seventh claims against them are accordingly dismissed with prejudice.

■ Plaintiff's Section 1983 claims against the City cannot be resolved on grounds of absolute immunity. Rather, under *Monell v. Dept. of Social Serv. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the official acts of municipal policy makers are acts of the municipality for purposes of Section 1983. *Id.* at 694, 98 S.Ct. 2037; *Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983). Accordingly, the Court must analyze the sufficiency of each of Plaintiff's claims as against the City.

## II. SUFFICIENCY OF PLAINTIFF'S CLAIMS

A. *First Cause of Action: Violation of the First Amendment*

Plaintiff alleges that Defendants violated her first amendment rights when they denied her salary increases to punish her for her political associations and activities. Defendants raise essentially two arguments to support dismissal of this claim: that Plaintiff has stated insufficient facts to allege that the salary decisions were based on her political association and advocacy, and that Plaintiff has not alleged a sufficient injury.

Defendants' assertion that Plaintiff's allegations are insufficiently specific to state a first amendment claim is not well-taken. In support of this argument, Defendants rely upon decisions in which plaintiffs sought to impose liability on defendants for activities protected by the first amendment, and are inapposite to the case at bar. *See Franchise*

*Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers,* 542 F.2d 1076 (9th Cir.1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977); *Lockary v. Kayfetz,* 587 F.Supp. 631 (N.D.Cal.1984).

■ Defendants' argument that Plaintiff has insufficiently alleged a constitutional injury is equally unavailing. Their assertion that Plaintiff has suffered no actual impairment to her political activities misses the point: it is Defendants' alleged attempt to punish Plaintiff for exercising her first amendment rights that constitutes the injury. While it's true, as Defendants point out, that the cases relied upon by Plaintiff involve more serious adverse job decisions taken against public employees or appointees, and not elected officials, this distinction does not compel the conclusion that no constitutional injury occurred. Plaintiff's first amendment claim does not rest on her alleged rights as a government employee. Rather, the Supreme Court "has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." *Elrod v. Burns,* 427 U.S. 347, 360–61, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976) (*quoting Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)). Freedom of expression under the first amendment may not be infringed by the denial of or placing of conditions upon a benefit or privilege. *Id.* (citing *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)); *see also Sugarman v. Dougall,* 413 U.S. 634, 644, 93 S.Ct. 2842, 2848, 37 L.Ed.2d 853 (1973); *Keyishian v. Board of Regents,* 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1967).

Defendants also argue that their decision advanced a public policy interest and that they applied the same policy when voting not to propose salary increases for other elected officials. This is a factual argument aimed at defeating Plaintiff's allegation that she was singled out for political reasons. As such, it is irrelevant to the sufficiency of the complaint's allegations, and thus irrelevant to the

Court's inquiry on a motion to dismiss under Rule 12(b)(6). Plaintiff need only allege that her political activities were a substantial or motivating factor in the adverse salary decisions; she need not allege that Defendants' decisions were based solely on such activities. *See Allen v. Scribner,* 812 F.2d 426, 433 (9th Cir.), *amended on other grounds,* 828 F.2d 1445 (1987); *McKinley v. City of Eloy,* 705 F.2d 1110, 1115 (9th Cir.1983).

Finally, citing *Porter v. City of Riverside,* 261 Cal.App.2d 832, 836–37, 68 Cal.Rptr. 313 (1968), Defendants argue that because the City Charter delegates to the city council the authority to set the Auditor's salary, the Court cannot go behind the Charter and receive evidence *aliunde* to establish facts that would tend to impeach and overturn salary decisions made pursuant to the Charter. In *Porter,* the plaintiff attacked a city ordinance authorizing reimbursement for the councilmembers' out-of-pocket expenses as a violation of the city charter. *Id.* at 835, 68 Cal.Rptr. 313. The trial court found that the councilmembers' actual out-of-pocket expenses were less than the ordinance allotted. The appellate court ruled that this finding "went beyond the issue generated in the complaint, was based on inadmissible evidence, and was therefore void." *Id.* at 838, 68 Cal.Rptr. 313. Unlike the case at bar, the complaint in *Porter* did not contain allegations sufficient to warrant that court's factual inquiry; significantly, there were no allegations that the council had "acted in bad faith with improper motives." *Id.* at 835, 68 Cal. Rptr. 313.

Plaintiff's complaint alleges sufficient facts to support her claim that Defendants' adverse salary decisions were based on the exercise of her rights to associate and speak on political issues. Accordingly, she has stated a claim under the first amendment, and Defendants' motion to dismiss this claim as against the City must be DENIED.

**B. *Second Cause of Action: Violation of Due Process***

■ A threshold requirement for a claim for violation of substantive due process is the termination or revocation of an existing property interest in a benefit created by an independent source, such as state or federal law. *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). As an elected official, Plaintiff is entitled to such pay, and only to such pay, as the Berkeley City Charter provides. *See Bateson v. Geisse,* 857 F.2d 1300, 1305 (9th Cir.1988); *Markman v. County of Los Angeles,* 35 Cal.App.3d 132, 134–35, 110 Cal.Rptr. 610 (1973). Plaintiff concedes that the City Charter entitles her to no particular salary in excess of $3600 nor places any restrictions on the city council's discretion in setting her salary. She argues, however, that she has protectable property interests in public employment benefits which were established through an implied agreement or reasonable expectation by both parties that she would receive the salary increases at issue. However, the cases she relies upon in support of this argument involved public employees. Plaintiff's claim for violation of substantive due process is thus premised on her allegation that she is a public employee for the purposes of constitutional due process protection, an argument which must fail.

As an elected official, Plaintiff does not have an "employer." She cannot be hired, fired or disciplined. No one supervises the quality or quantity of her work. As Plaintiff's brief demonstrates, the only power Defendants have over her is the power to fix her salary. Accordingly, Plaintiff is not an employee for the purposes of the decisions she cites, which are premised on the concept that an employer can bargain with its employees for an implied employment agreement.

Accordingly, Plaintiff cannot establish a protected property interest in her job, and this claim must be dismissed with prejudice. *See Wolf v. Larson,* 897 F.2d 1409, 1411–13 (7th Cir.1990).

**C. *Third Cause of Action: Violation of Equal Protection***

■ Plaintiff's equal protection claim is based on the premise that she was treated differently from other, non-elected city department heads because of her political activities. Defendants have established that they acted to prevent salary increases for other

elected officials, including themselves. Defendants assert that Plaintiff's status as an elected official provides a rational basis for distinguishing between her and other city department heads.

■ Where, as here, the proffered classification does not trammel fundamental personal rights or implicate a suspect classification, it will withstand constitutional challenge if the law in question has some rational relation to a legitimate governmental interest. *City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Under this "rational basis" test, the Court must uphold the challenged salary actions if there are any conceivable facts that reasonably constitute a distinction between Plaintiff for the purposes of salary increases; in other words, Plaintiff can prevail only if the classification was malicious, irrational, or plainly arbitrary. *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 813, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); *U.S.D.A. v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973); *Lockary v. Kayfetz,* 917 F.2d 1150, 1155 (9th Cir.1990).

Defendants assert that the distinction between elected officials and non-elected employees is rationally related to the legitimate governmental purposes of exercising budgetary restraint and promoting a public policy that the City's elected leadership seek and hold public office for the honor of serving the public, and not for renumeration. Plaintiff argues that she is similarly situated to the non-elected city department heads and not to other elected officials, and therefore the salary actions were not rationally related to Defendants' proffered policies. For the reasons discussed above, the Court holds that Plaintiff is not similarly situated to non-elected employees, and this argument fails.

Similarly unavailing are Plaintiff's arguments that neither policy concern articulated by Defendants can be seen as a legitimate government interest. The Supreme Court

holds that *any* rational purpose possibly motivating the challenged decision will defeat an equal protection claim. *See Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 463, 108 S.Ct. 2481, 2490, 101 L.Ed.2d 399 (1988).

Accordingly, this claim is dismissed with prejudice.

### D. Fourth Cause of Action: Bill of Attainder

■ A bill of attainder is a legislative act which inflicts punishment without a judicial trial. *Nixon v. Administrator of Gen'l Serv.,* 433 U.S. 425, 468–69, 97 S.Ct. 2777, 2802–03, 53 L.Ed.2d 867 (1977). Traditionally, this constitutional provision protects against punishment for criminal or political behavior without a trial, and "punishment" connotes affirmative restraints on or deprivation of life, liberty or property or suspension of political or civil rights. *See Cummings v. Missouri,* 71 U.S. (4 Wall.), 277, 323, 18 L.Ed. 356 (1867); *Flemming v. Nestor,* 363 U.S. 603, 614–16, 80 S.Ct. 1367, 1374–75, 4 L.Ed.2d 1435, *reh'g denied,* 364 U.S. 854, 81 S.Ct. 29, 5 L.Ed.2d 77 (1960). While the scope of this doctrine has expanded, it is clear that governmental denial of compensation or appropriation does not constitute a bill of attainder unless the denial constitutes a ban on continuing public employment. *See United States v. Lovett,* 328 U.S. 303, 313–14, 66 S.Ct. 1073, 1077–78, 90 L.Ed. 1252 (1946); *California State Employees Ass'n v. Flournoy,* 32 Cal.App.3d 219, 225–28, 108 Cal.Rptr. 251, *cert. denied,* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973).

■ Accordingly, the challenged failure to increase Plaintiff's salary cannot constitute a bill of attainder as a matter of law, and this claim is dismissed with prejudice.[4]

### E. Fifth Cause of Action: Conspiracy

■ To state a claim for relief under 42 U.S.C. § 1985(3), Plaintiff must allege four elements: "(1) a conspiracy; (2) for the

---

4. Plaintiff also alleges in her fourth cause of action that Defendants' salary actions subjected her to "ex post facto laws" in violation of the Constitution. 1st Am.Comp. ¶ 41. An ex post facto law is a retrospective statute which punishes as a crime an act previously committed, makes the punishment for a crime more burdensome, or deprives a person accused of a crime of a previously available defense. *See Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Plaintiff's complaint in no way supports such a claim.

purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049, *reh'g denied,* 464 U.S. 875, 104 S.Ct. 211, 78 L.Ed.2d 186 (1983). Additionally, Plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiff alleges that Defendants deprived her of her first amendment rights because of her political affiliation. Whether Section 1985(3) was intended to reach class-based animus based on political beliefs or associations has not yet been decided by the Supreme Court or the Ninth Circuit; however, other courts have determined that political groups are entitled to Section 1985(3) protection. *See United Broth., supra,* 463 U.S. at 837, 103 S.Ct. at 3360; *Stevens v. Rifkin,* 608 F.Supp. 710, 722 (N.D.Cal.1984). Even if Section 1985(3) is construed to reach conspiracies aimed at political groups, Plaintiff has failed to allege sufficient facts to support her conclusory allegations that Defendants' adverse salary actions were taken because of her affiliation with a political group. *See, e.g., Rifkin, supra,* 608 F.Supp. at 716–17. While this deficiency could be cured by amendment, Plaintiff faces a more difficult legal hurdle with respect to her allegations of a Section 1985 conspiracy.

■ Since the individual Defendants are entitled to legislative immunity, Plaintiff's conspiracy claims against them must be dismissed. While only one Defendant, the City, remains in this cause of action, this fact itself is not fatal to Plaintiff's conspiracy claim; it is possible for one defendant to be immune from liability, and yet another defendant to be liable for conspiring with the immune party. *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Accordingly, the Court must determine whether the City may be held liable under Section 1985(3) for conspiring with its own agents, the Defendant city councilmembers. To date, the Ninth Circuit has expressly declined to resolve this issue. *See Portman v. County of Santa Clara,* 995 F.2d 898, 910 (9th Cir.1993); *Padway v. Palches,* 665 F.2d 965, 969 (9th Cir.1982).

Other circuits are split on the issue. Some courts have held that the "intra-corporate conspiracy" doctrine applies in Section 1985 cases, holding that a governmental body cannot conspire with itself, and that individual members of a governmental body cannot conspire when they act in their official capacity to take official acts on behalf of the governing body. *See Runs After v. United States,* 766 F.2d 347, 354 (8th Cir.1985); *accord Gladden v. Barry,* 558 F.Supp. 676, 679 (D.D.C.1983); *Edmonds v. Dillin,* 485 F.Supp. 722, 729 (N.D.Ohio 1980).[5] Other courts have rejected application of the intra-corporate conspiracy doctrine to Section 1985 actions. *See Stathos v. Bowden,* 728 F.2d 15, 20–21 (1st Cir.1984) (governmental body); *Rebel Van Lines v. City of Compton,* 663 F.Supp. 786, 792–93 (C.D.Cal.1987) (governmental body); *cf. Novotny v. Great American Fed. Savings & Loan Ass'n,* 584 F.2d 1235, 1256–59 (3d Cir.1978) (en banc), *rev'd on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (corporation).[6]

■ For purposes of the present action, this Court finds persuasive the rationale supporting application of the intra-corporate conspiracy doctrine to bar a Section 1985 claim where the conspiratorial conduct challenged is essentially a single act by a single

---

**5.** *Cf. Lieberman v. Gant,* 474 F.Supp. 848, 875 (D.Conn.1979), *aff'd* 630 F.2d 60 (2d Cir.1980) (state university); *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972) (corporation); *Buschi v. Kirven,* 775 F.2d 1240, 1251–52 (4th Cir. 1985) (corporation); *Doherty v. American Motors Corp.,* 728 F.2d 334, 339–40 (6th Cir.1984) (corporation); *Girard v. 94th Street & Fifth Avenue Corp.,* 530 F.2d 66, 69–72 (2d Cir.), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976) (corporation).

**6.** The Supreme Court noted, but did not resolve, the circuit split.

governmental body acting exclusively through its own officers, each acting within the scope of his or her official capacity. The intra-corporate conspiracy doctrine was first developed to preclude a corporation from being charged with conspiracy to violate the anti-trust laws "when it exercises its rights through its officers and agents, which is the only medium through which it can possibly act." *Nelson Radio & Supply Co. v. Motorola,* 200 F.2d 911, 914 (5th Cir.1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953). Similarly, it defies common sense to render the same conduct for which a government entity is held liable, i.e., the official votes of individual councilmembers, as separate acts accomplished by separate conspiratorial actors other than the government entity. *See Runs After, supra,* 766 F.2d at 354; *Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *cf. Stathos, supra,* 728 F.2d at 21 (intra-corporate conspiracy doctrine rejected on grounds that defendants' conduct involved a series of acts over time). Plaintiff's Section 1983 claim against the City is adequate to provide potential redress for the adverse salary decisions Plaintiff complains of.

Accordingly, the Court holds that Plaintiff's Section 1985(3) conspiracy claim cannot be brought against the City for conspiring with its own officials, and this claim is dismissed with prejudice.

### F. Sixth Cause of Action: Violation of City Charter

■ Plaintiff asserts that Defendants violated Art. VII, § 37 of the Berkeley City Charter, which prohibits various employment actions on the basis, *inter alia,* of political opinions or affiliations or political services. Section 37 prohibits certain employment actions from being taken against persons appointed "to position under the City Government," including "appointment to or selection for or removal from any office of employment . . . transfer, promotion, reduction, reward or punishment." Def.'s Request for Judicial

Notice Exh. A. Section 37 is clearly intended to protect city employees, not elected officials. Accordingly, this cause of action is dismissed with prejudice.

### G. Seventh Cause of Action: Violation of Cal.Civ.Code § 52.1

■ This claim tracks the language of California Civil Code Section 52.1(b), alleging interference or attempted interference through "threats, intimidation, and/or coercion" with Plaintiff's "exercise and enjoyment of the rights secured to her by the Constitution of the United States and the Constitution and laws of California and of the Charter of the City of Berkeley." [7] Although no California court has interpreted Section 52.1(b), the context of this section makes it clear that the statute is meant to protect against violence or the threat of violence. *See* Cal.Civ. Code § 52.1(j) (speech alone insufficient to support claim unless it threatens violence). Accordingly, the votes and threats alleged in the complaint are insufficiently threatening to state a claim under this section, and this claim is dismissed with prejudice.

### H. Eighth Cause of Action: Defamation

Plaintiff brings this claim individually against Defendant Collignon for allegedly defamatory statements he made about her in a press release. Plaintiff cannot maintain an action for money or damages against Defendant Collignon for acts or omissions committed in the course and scope of his office unless she complied with the claims procedure of the California Tort Claims Act. Cal. Gov.Code §§ 905, 905.2; *Williams v. Horvath,* 16 Cal.3d 834, 838, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976); *Dujardin v. Ventura County Gen'l Hospital,* 69 Cal.App.3d 350, 355, 138 Cal.Rptr. 20 (1977).

Plaintiff concedes that she has not filed a claim pursuant to the Tort Claims Act. However, Plaintiff claims that Collignon was acting in his personal, not official capacity, and therefore a prerequisite claim pursuant to the Tort Claims Act is not required. *See Franklin v. Municipal Court,* 26 Cal.App.3d

---

7. Plaintiff states that this claim was mistakenly labelled as one arising under Cal.Civ.Code § 51.7.

884, 901, 103 Cal.Rptr. 354 (1972). In support of this argument, Plaintiff relies on *Lipman v. Brisbane Elem. School Dist.,* 55 Cal.2d 224, 11 Cal.Rptr. 97, 359 P.2d 465 (1961). In *Lipman,* the court determined that three school trustees did not act within the course and scope of their office when they made defamatory statements to newspaper reporters about the school district superintendent, and held that the trustees were not entitled to governmental immunity. *Id.* at 233, 11 Cal.Rptr. 97, 359 P.2d 465. As Defendants point out, this is a different inquiry than that presented here, whether a public official acted within the course and scope of his or her public office for the purposes of *respondeat superior* under the Tort Claims Act.

Defendants rely on *Sanborn v. Chronicle Pub. Co.,* 18 Cal.3d 406, 134 Cal.Rptr. 402, 556 P.2d 764 (1976). In *Sanborn,* the California Supreme Court affirmed the trial court's implied finding that the clerk of San Francisco City and County was acting within the scope of his employment when he defamed the plaintiff in a press conference, holding that it was the purpose of the act, to communicate with the press regarding his administration of a public office, rather than the nature of the act, to defame the plaintiff, which determined whether he was acting in an official capacity. *Id.* at 412, 134 Cal.Rptr. 402, 556 P.2d 764. Accordingly, the court upheld liability of City and County of San Francisco for the clerk's conduct. *Id.* at 411–12, 134 Cal.Rptr. 402, 556 P.2d 764.

■ Plaintiff's assertion that Collignon's allegedly defamatory statements were not official statements of the City of Berkeley, but instead "purely political diatribes" cannot compel a different conclusion in the case at bar. "If the object or end to be accomplished is within the employee's express or implied authority his act is deemed to be within the scope of his employment irrespective of its wrongful nature." *Id.* at 411, 134 Cal.Rptr. 402, 556 P.2d 764 (quoting *Neal v. Gatlin,* 35 Cal.App.3d 871, 875, 111 Cal.Rptr. 117 (1973)). Plaintiff's complaint alleges that Collignon issued a written press release stating that " '[The Auditor's department has] historically been populated by what Collig-

non's colleagues call political patronage employees.' " 1st Am.Comp. ¶ 50. Such a statement serves the purpose of informing the press and the public as to whether the Auditor's department was "performing its public duties in a rational and orderly fashion," and was therefore made within the course and scope of Collignon's official duties. *Id.* at 412, 134 Cal.Rptr. 402, 556 P.2d 764; *see also Mazzola v. Feinstein,* 154 Cal.App.3d 305, 312, 201 Cal.Rptr. 148 (1984) (city supervisors' "public expression of their views on any matter of civic interest" are within the scope of their employment as a matter of law).

Accordingly, Plaintiff's claim against Collignon must be dismissed with prejudice for failure to comply with the claims procedure of the California Tort Claims Act.

## CONCLUSION

1. Defendants' motion to dismiss the First Cause of Action for violation of Plaintiff's First Amendment rights is GRANTED in part, and the First Cause of Action is hereby DISMISSED with prejudice, as to the individual Defendants. Defendants' motion to dismiss the First Cause of Action is DENIED as against Defendant the City of Berkeley.

2. Defendants' motion to dismiss Plaintiff's Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action is GRANTED, and these causes of action are hereby DISMISSED with prejudice as to all Defendants.

IT IS SO ORDERED.